1. The Code, § 114-709, as amended by the act of 1937 (Ga. L. 1937, p. 528), does not provide that a claim for additional compensation on account of a change in condition of the claimant must be filed with the Industrial Board within two years after the date of the final payment of compensation under a previous award, in order to give the board jurisdiction, but provides that the claim based on change in condition "must be filed within two years from the date that the Industrial Board is notified of final payment of compensation to the claimant."
2. On the hearing of a claim for additional compensation, based on a change in the condition of the claimant since the previous award, a finding by the Industrial Board in making the previous award that the claimant's tubercular condition, which caused his disability, had been aggravated by the administration of ether during the performance of an operation for hernia, caused by an accidental injury received by him while at work for his employer, and the previous award was not appealed from, is conclusive and constitutes res judicata that the claimant's permanent disability resulted from his tubercular condition, and that the same was caused by an accidental injury growing out of his employment.
 DECIDED DECEMBER 3, 1943. REHEARING DENIED DECEMBER 17, 1943.
On February 3, 1938, while employed as a weaver for the Exposition Cotton Mills, and while engaged in the performance of his work, John H. Brooks developed a hernia. The insurance carrier for the employer was the Fidelity Casualty Company of New York. Two days later Brooks was operated on for the hernia by Dr. Harry Rogers. On March 15, 1938, Brooks resumed his work, and worked for almost a month. The insurance carrier paid compensation to Brooks for a temporary total disability for the period, February 10, 1938, to March 12, 1938. Payment of this compensation was approved by the Industrial Board. On July 23, 1938, *Page 356 
Brooks applied for additional compensation on the ground that about May 16 a change in his condition had taken place as the result of the administration of ether by Dr. Rogers in performing the hernia operation and that he now had active tuberculosis. The hearing on this application was had before Director Stanley on February 1, 1939. It appeared that at the time Brooks was operated on he had a latent tubercular condition. It was also shown that in November 1937, Brooks, who was about fifty years of age, had been operated on for a bone fusion, and at that time a Wasserman blood test showed a positive reaction. It also appeared that for the syphilitic condition Brooks received a number of 606 "shots." It further appeared that previous to the hearing Brooks had had pneumonia in 1912, in 1920, and in 1926. Three medical experts testified at the hearing, and two of them, Dr. Harry Rogers and Dr. C. H. Holmes, were of the opinion that there was no relation between Brooks' tubercular condition and his hernia operation, at which the ether had been administered. The third doctor, Dr. Dan Y. Sage, testified that in his opinion the ether was a contributing factor in the tubercular condition, in that it aggravated such latent condition and caused it to flare up and become active. On March 2, 1939, the director awarded compensation to Brooks for total disability for a period of 350 weeks, or until such time as a change in condition might take place, basing his award on the finding that the hernia and the administration of ether in the hernia operation had aggravated the pre-existing disease of tuberculosis. His finding was as follows: "From the preponderance of the evidence this director finds as a matter of fact that the accidental injury and treatment therefor did aggravate the pre-existing disease of tuberculosis and caused it to immediately flare up, as evidenced by the fact that claimant spat up blood while in the hospital and after leaving, and within a period of little more than three months, on May 11, 1938, claimant suffered a pulmonary hemorrhage and immediate total disability as a result of the aggravation of the preexisting disease. This director further finds that the disease of tuberculosis which is causing claimant's disability resulted naturally and unavoidably from the accidental injury of February 3, 1938, within the meaning of the Georgia Workmen's Compensation Act, Section 114-102. This director further finds that claimant is now, and has been since May 12, 1938, suffering total disability *Page 357 
as a result of the aggravation of the pre-existing disease." On appeal, the board affirmed this award, and no appeal to the courts was made.
Thereafter, Brooks made several efforts to secure a lump-sum settlement of the compensation being paid to him under the above award, and finally on August 21, 1939, a lump-sum settlement for 140 weeks was obtained and was paid in August of that year. On April 15, 1940, McLarty Cooper, as attorneys for Brooks, petitioned the Industrial Board to award Brooks "the remaining one half of the amount due him under the award . . dated March 2, 1939," on the ground that "claimant is permanently and totally disabled, and has an active case of tuberculosis with a positive sputum, which has not improved since the award of the first half of said compensation in a lump-sum," On March 2, 1939. The petition stated that Brooks was in need of treatment, that he had a sixteen-year old son in high school who was looking to him for support, and that Brooks had no funds with which to obtain the necessary treatment and to support himself and his son. The insurance carrier objected, and contended that it was not to the best interest of Brooks that such compensation be paid to him at that time, and also because there was nothing in the record to show that the claimant was permanently and totally disabled, as in many cases of active tuberculosis the disease had been arrested so that the patient was able to resume gainful occupation. On April 24, 1940, Director Stanley denied the award. On May 3, 1940, another petition was filed with the board by the attorneys for Brooks in which they asked that Brooks receive half of the remaining half of the compensation due Brooks under the award of March 2, 1939, for the reason that he was permanently and totally disabled with an active case of tuberculosis which had not improved, and that since the award of March 2, 1939, an examination by Dr. N. H. Vinson of Rome, Georgia, on April 6, 1940, disclosed that Brooks should be under constant care of a doctor and nurse and receive a high caloric diet. It was also set up that Brooks had been examined by Dr. Carl C. Carver of Atlanta, who likewise stated that Brooks should be under the supervision of a doctor and a nurse, and should have the best of food. It was alleged that Brooks did not have the funds with which to pay for such treatment and food, and also that he had the care of his sixteen-year old son who was in high school *Page 358 
and had no other means of support. The insurance carrier made the same objections to this petition as it had made to the petition of April 15, 1940, and set up in addition that from information and belief there had been a change in the physical condition of Brooks, and "he is not now totally disabled and entitled to compensation."
A hearing was had before Deputy Director Hartley. Neither Brooks nor his attorneys were present. After hearing testimony of a witness to the effect that Brooks was at the time employed by another cotton mill, of which the witness was the manager, and had been earning about the same amount that he earned with the Exposition Cotton Mill, the director ordered that compensation be suspended until an award was rendered, stating that such order was made "in view of the testimony given here by the witnesses for the employer [to the effect that the claimant had worked since the award of March 2, 1939] and the non-appearance of the claimant or claimant's counsel after due notice." On September 19, 1940, Deputy Director Hartley made an award based on the testimony at the above hearing in which he denied further compensation on the ground that Brooks had "fully recovered from all disability resulting from the injury sustained on February 3, 1938."
On January 17, 1942, Brooks, by Joe Hill Smith as his attorney, requested that the Industrial Board grant him a hearing on the ground of a "changed condition." On February 10, 1942, a hearing was had before Deputy Director Max E. Land. He found that Brooks was at that time totally disabled as the result of his accident, that there had been a change for the worse in his condition since he last received compensation, and that his condition had been and was growing gradually worse. The employer and insurance carrier appealed to the board from this finding. The board, on May 13, 1942, after reviewing the evidence at the hearing before Deputy Director Land, made the following finding: "The record shows that the claim first came before the Industrial Board in a hearing conducted by the then chairman, Hal M. Stanley, on February 1st, 1939, in which twelve witnesses were examined, three of whom were physicians; and that on March 2, 1939, be [sic] awarded claimant 350 weeks compensation, at this time finding that claimant was totally and permanently disabled as a result of tuberculosis, which had been aggravated by the accidental injury and *Page 359 
treatment therefor, said treatment being an operation lasting one hour under an anesthetic, it being the opinion of Judge Stanley, after hearing medical evidence, that the anesthetic aided in breaking down the lung tissues of the claimant and brought about his disabled condition. This award was affirmed by the Industrial Board on March 28, 1939, and no further appeal was made by the carrier. The record further shows that the claimant filed an application for a lump-sum payment for the purpose of taking hospitalization, but that this application was opposed by the carrier, and that an award of August 17, 1939, denied the application for a lump-sum payment. The record further shows that other applications were filed for a lump-sum advances, some of which were denied and others allowed. The record shows that a hearing was had before Deputy Director A. J. Hartley on July 15, 1940, upon application of the insurance carrier, based upon the grounds of a change in condition of the claimant. The record shows that neither the claimant nor his attorneys, Robert McLarty and Walter G. Cooper, were present. The evidence shows that the claimant returned to regular employment on November 13, 1939, with A. D. Juilliard, of Rome, Ga., and continued to work there through July 6, 1940. Claimant having suffered from a bodily disability, and having returned to work on November 13, 1939, Deputy Director Hartley very properly ordered compensation stopped as of that date. The present hearing was requested by the claimant for the purpose of asking for an additional advance, in a letter written by claimant's present attorney, and this hearing was set down by the docket clerk for the purpose of determining `a change in condition.' At the outset of the hearing, attorney for the carrier made a motion that the claim be dismissed on the ground that the award of September 19, 1940, discontinuing compensation as of November 13, 1939, at which time the evidence showed the claimant had returned to work, had not been appealed from within two years after the final date of payment of compensation. The contention of the claimant at this time, as expressed by his attorney, was that the claimant had no notice of the previous hearing, nor of the award rendered by Deputy Director Hartley, and therefore had not had his day in court; yet the record shows that, although compensation was discontinued as of November 13, 1939, the claimant or his attorneys did not apply for a hearing until January 17, 1942, *Page 360 
nor did claimant even communicate with the board about his claim until the latter part of December 1941, or more than two years after his compensation had been discontinued. The Industrial Board of Georgia has no inherent powers, and only that authority and jurisdiction conferred on it by the Legislature of this State. Section 114-709 of the Workmen's Compensation Act says in part: `Upon the ground of a change in condition, the Industrial Board may, within two years from the date that the Industrial Board is notified of the final payment of a claim, review any award or any settlement made between the parties and filed with the board, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded or agreed upon, subject to the maximum [maximum] or minimum provided in this title.' It is the opinion of the full board that the claimant, having failed to make application within two years after the date of final payment of compensation, that it has no jurisdiction to even hear the merits of the case or change the previous award. The evidence at this hearing showed that the claimant at this time is in all probability suffering from total and permanent disability, and there is some evidence to the effect that this disability may have been related to the original accident and treatment, but the facts show that the claimant did not seek the relief the law provided for him, and that his failure to either contact the board for over two years, or obtain another lawyer, or communicate with his previous attorneys in the interim, leaves a strong presumption in the minds of the members of this board that the claimant worked nearly the entire time since he was cut off on November 13, 1939. After a careful consideration of the evidence, the full board finds that the claimant has failed to comply with Section 114-709 of the Workmen's Compensation Act, and his claim for compensation should be denied."
The claimant appealed from the denial of compensation by the board to the superior court of Fulton County. On January 30, 1943, that court, holding that the board erred in certain findings of fact and of law remanded the case to the Industrial Board for further hearing. This judgment was rendered by Hon. Paul S. Etheridge, and is as follows: "It appears from the record that a hearing was had on February 10, 1942, before Deputy Director max E. Land (Exh. 33) the same being an application for a hearing *Page 361 
upon the ground of a change of physical condition. At said hearing, as disclosed by the record, previous applications and findings were referred to, and contention was made by claimant that he was not notified of the hearing before Deputy Director Hartley nor the ruling made by him on September 19, 1940, and further that the evidence offered before Deputy Director Hartley was ex parte and not binding upon claimant. Deputy Director Land sustained this contention and held as a matter of law that claimant had not had his day in court and was not bound by the terms of the award of September 19, 1940, (hearing July 15, 1940). The award of Deputy Director Land was that defendant and insurance carrier should pay to claimant the sum of $7.00 per week for 140 weeks, commencing on the 10th day of February, 1942. It appears from the record that claimant had been awarded compensation at $7.00 per week for a total of 350 weeks, beginning with May 12, 1938. This award by Director Hal M. Stanley was reviewed and sustained by the full board on March 28, 1939. (Exh. 13). On August 21, 1939, the board, upon application, allowed an advance of a lump-sum payment of 140 weeks at $7.00 per week (computed value $919.16), providing that weekly payments should be discontinued until the expiration of 140 weeks, then the remaining payments of compensation to be resumed. (Exh. 21). A mere application of simple arithmetic would disclose that the time for resumption of weekly payments would extend to approximately May, 1942. The defendant made application for review before the full board on March 2, 1942 (Exh. 35). On May 13, 1942, the board filed its notice of award and its findings, wherein said board reversed the award of Deputy Director Max E. Land and dismissed said claim (Exh. 37), which ruling is the subject matter of this review. Without passing on the question as to notice to claimant and/or his attorneys for the hearing before Deputy Director Hartley on July 15, 1940, it definitely appears that the final hearing before the board May 13, 1942, was within the two-year period following the judgment of Deputy Director A. J. Hartley, July 15, 1940 (date of award, Sept. 19, 1940), which award undertook to discontinue payments as of November 13, 1939, whereas the record shows by the terms of the original advance of 140 weeks (Exh. 21) that the term covered by advance lump-sum payments had not expired, and no payments were being made to claimant on said award, and *Page 362 
no cessation of payments occurred to put the claimant on notice that such an award had been made. It is held by this court that the two-year period began to run from the date of the notice of award of September 19, 1940, and that the finding of the board that: `It is the opinion of the full board that the claimant having failed to make application within two years after the date of final payment of compensation, that it has no jurisdiction to even hear the merits of the case or change the previous award.' is erroneous. It is further held that the ruling of said full board that: `The evidence at this hearing showed that the claimant at this time is in all probability suffering from total and permanent disability, and there is some evidence to the effect that this disability may have been related to the original accident and treatment, but the facts show that the claimant did not seek the relief the law provided for him, and that his failure to either contact the board for over two years, or obtain another lawyer, or communicate with his previous attorneys in the interim, leaves a strong presumption in the minds of the members of this board that the claimant worked nearly the entire time since he was cut off on November 13, 1939,' sets forth an erroneous premise, and one not justified by the facts in the case, as to the alleged failure on the part of claimant to act within the provisions of the law. It is clear from the ruling by this court, supra, that the assumption by the board that claimant failed to contact the board for over two years is erroneous. The further assumption on the part of said board as quoted above, to wit: `The claimant worked nearly the entire time since he was cut off on November 13, 1939' is erroneous, the claimant not having been cut off on November 13, 1939, but on the contrary having received a lump-sum advance extending over a period which would not expire before May, 1942. It is further held that that portion of the findings of the full board quoted above, wherein it is stated that `the evidence at this hearing shows that the claimant at this time is in all probability suffering from total and permanent disability and there is some evidence to the effect that this disability may have been related to the original accident and treatment,' presents a situation that should have been considered by the board in the light of the fact that claimant under any view of the case was within the two-year period allowed by law for the purpose of reviewing an award, and that claimant was within his rights to assert a change *Page 363 
of condition, even though a previous finding disclosed upon exparte evidence that claimant had recovered from the effects of his injury and had returned to work. It is therefore held that the ruling and findings of the board now under consideration are erroneous, and the same are hereby reversed, and the case is remanded for further hearing by said board. This January 30, 1943." From this judgment the insurance carrier and the employer excepted.
1. The superior court properly ruled that the Industrial Board erroneously found that it had no jurisdiction to consider the claimant's application on the ground of change in condition, for the reason that it was not made "within two years after the date of final payment of compensation." The Code, § 114-709, as amended by the act of 1937 (Ga. L. 1937, p. 528), does not provide, as held by the Industrial Board, that an application for additional compensation based on the ground that there has been a change in the condition of the claimant since a previous award, must be brought within two years after the date of final payment of compensation; but provides that a claim based on a change in condition must be filed within two years from the date that the Industrial Board is notified of final payment of compensation to the claimant. Under the facts it appears that while payment of compensation to the claimant was denied under the award of Deputy Director Hartley of September 19, 1940, as of November 13, 1939, and the employer and insurance carrier were ordered and directed under such award "to suspend all payments of compensation to the claimant on and after November 13, 1939," the date on which it can properly be stated that the Industrial Board was notified of final payment of compensation is September 19, 1940, when the award was made holding that the claimant had recovered and was no longer totally disabled as the result of the injury in February 1938, and that such recovery had taken place on November 13, 1939. Compensation had been previously awarded to the claimant for the total disability for 350 weeks, less the compensation previously paid for the temporary total disability, and at the time of the award of Deputy Director Hartley on September 19, 1940, compensation was in effect being paid to the *Page 364 
claimant, for the reason that on August 21, 1939, he had been allowed by the Industrial Board a lump-sum advance of compensation of 140 weeks, which embraced September 1940. Under the Code, § 114-709, it is provided that where there is an award based on a change in condition of an injured employee who had been previously awarded compensation, an award denying compensation because it appeared that the employee had fully recovered and was no longer disabled, can not affect the award previously made to the employee and under which compensation had been paid to him. Therefore while Deputy Director Hartley could properly have held that there had been a change in the condition of the claimant, and he had fully recovered on November 13, 1939, which was about ten months previous to the date on which the award was made, he could then hold that compensation was not payable to the claimant after November 13, 1939. The award of September 19, 1940, by Deputy Director Hartley, which was a review of the previous award of the Industrial Board under which compensation had been paid to the claimant, could not "affect" the previous award of compensation "as regards any moneys paid." To hold that on March 2, 1942, the date on which an application was made for a review of the award of Deputy Director Hartley on the ground of a change in condition, more than two years had elapsed since the Industrial Board had been "notified of the final payment of claim," would be clearly contrary to the undisputed facts. Had it not been for the lump-sum payment of 140 weeks made in August 1939, weekly compensation would have been paid to the claimant at least until June 22, 1940, the date on which the insurer and employer supplemented their objections to a further lump-sum advance to the claimant, and denied any further liability on the ground that there had been a change in the claimant's condition so that he was not then totally disabled and therefore not entitled to compensation, a date within two years from January 17, 1942, the date on which the application by the claimant was made for a review of the award of September 19, 1940. The trial judge properly ruled that the Industrial Board erroneously held that the claim for compensation on account of a changed condition was barred under the Code, § 114-709, as amended by said act of 1937.
2. It had been adjudicated that the claimant's previous tubercular condition had been aggravated by the administration of ether *Page 365 
while an operation was being performed upon him for a hernia which was caused by an accident arising out of and in the course of his employment. It appeared from the facts that this aggravation caused active tuberculosis to break out from a previous latent tubercular condition, and that the claimant, although he had been able to work for a short period of time thereafter, continued to have such active tuberculosis. The adjudication that such active tubercular condition was caused to become active by the ether being administered to the claimant has now become res judicata, and is conclusive on the parties, the award finding to that effect not having been appealed to the courts. AEtna Life Ins. Co. v. Davis, 172 Ga. 258
(157 S.E. 449). The award of Deputy Director Hartley rendered on September 19, 1940, ending compensation as of November 13, 1939, in so far as he found that the claimant had "fully recovered from all disability resulting from an injury received February 3, 1938," can not be taken as an adjudication that the claimant's tubercular condition was not caused from the injury, and while he found that the claimant had recovered from all disability resulting from the injury, the award was not an adjudication that the claimant's condition might not subsequently change by a flaring up of the dormant tubercular condition which was a result of the injury. See Globe Indemnity Co. v. Langford, 35 Ga. App. 599
(134 S.E. 357). The evidence on which this award of Deputy Director Hartley was predicated simply showed that the claimant had worked for a short time at work similar to that which he was doing at the time he sustained the injury. It is therefore immaterial whether Hartley's finding was valid or invalid.
It follows that the judgment of the superior court remanding the case to the Industrial Board for consideration on its merits, as indicated in the judgment, was not error.
Judgment affirmed. Sutton and Felton, JJ., concur.